The opinions of the Justices of this Court, were given orally, at May Term last; since which time, the Reporter has been furnished with the following written opinions.
Hornblower, C. J.
By the 6th section of the act of the 14th of February, 1818, {Rev. Laws 652, 653,) it was enacted that it should not thereafter be lawful to confine the person of any female for debt. Hence it is argued, and I think conclusively, that a female debtor cannot be proceeded against, by writ of attachment.
By the act for the relief of creditors against absconding and absent debtors, {Rev. L. 355,) a defendant in attachment cannot appear and controvert the demand of the plaintiff in the writ, or of any other persons claiming to be creditors, without first putting in special bail, not only to the action of the plaintiff, but to that of every other person who may apply to be admitted as a creditor, under the attachment.
We must then either permit this woman to appearand defend herself, without putting in bail, or we must deny to her, the right of being heard, unless she will yield up her person to the custody of bail, and thus subject herself to immediate imprisonment upon a surrender by them.
It is said however, in answer to this, that no Judge would venture to commit the defendant to the custody of the sheriff, if such surrender should be made. But I would ask how the bail can surrender their principal, but by the delivery of his or her person to the Sheriff, or how the Judge can order an exoneretur on the bail piece, without first committing the defendant to the custody of the sheriff? Again, it is said, that persons becoming special bail for a woman, knowing that she cannot be imprisoned, would have no right to surrender her in discharge of themselves. To this however, several Satisfactory answers are so obvious, that I only wonder how such an argument could be seriously, urged. In the first place, what right have we to construct a neyr recognizance of special bail, and require them to become security for the payment of the debt, instead of entering into the *459 conditional obligation only, that they will pay the debt, unless she delivers herself up to the sheriff of the county. Again, would it not be tantamount to denying a woman, the benefit of a hearing, to say to her, we cannot permit you to make any defence to this action, or to reclaim your property, unless you will get security not for your appearance, but for the unconditional payment of the debt. This would be imposing a hardship upon a female, singularly inconsistent with the liberal spirit of that legislation which in deference to the sex, exempts her from imprisonment for debt.
But after all, the true rule has been repeatedly recognized by this Court. In Peacock’s heirs v. Wildes, 3 Halst. 180; Jeffery v. Wooley, 5 Halst. 123; and in Haight v. Executors of Bergh, 3 Green 183, it was held, that an attachment will not lie, in any case, where the defendant cannot be arrested and held to bail. And it will be found to be a mistake to suppose, as was done on the argument, that this rule has reference only to the nature of the claim, and not to the rights of the person. On the contrary, it has in some instances, respect to the nature of the demand, and i-n others to the character of the debtor. Eor instance, an attachment will not lie, for an assault and battery, or for words spoken. Why.? Not because the assailant or the slanderer may not be arrested and held to bail, not because his person is exempt from imprisonment, but because the damages are unliquidated. Here then the rule has respect to the nature of the demand. Again, an attachment will not lie against an heir at law; an executor or an administrator. Why ? Not because the debt or demand (which may be on a bond or promissory note) is of such a nature, that a capias may not be issued for it, but because the person in his representative character, is not liable to arrest and imprisonment. Here then the rule has reference, not to the nature of the debt, but to the personal privilege and exemption of the debtor from arrest and imprisonment. So too in the case of a female; she cannot be proceeded against by attachment, because she cannot be held to bail in a civil suit; and she cannot be held to bail, not because the debt is of a character which cannot be sued for by capias — but because she herself, to the honor of our State, cannot be imprisoned or held in custody, one moment for any debt.
If as was supposed at the bar, this doctrine will exempt an in *460 solvent debtor, who may acquire property after his discharge from an attachment. So be it. The proceeding by attachment is altogether a statutory remedy, and if it fails to reach the case of such an insolvent debtor, we cannot extend it to him, by construction. From all past experience however, we shall seldom if ever, have occasion to regret that the statute does not authorize an attachment against an insolvent debtor, for they take especial care never to be the owner of any, after they have once been discharged.
In my opinion, the attachment must be quashed.
Ford, J. and Dayton, J. concurred.
White, J.
This is an attachment issued in due form, by "Van Emburg against Dorcas Pullinger, a feme sole absent debtor, for a debt by her contracted and justly due and owing to the plaintiff. The writ was regularly served on property of the defendant, which is liable to be seized and sold for the payment of this debt, provided the law is sufficient to bring the defendant within the jurisdiction of the Court, that they can proceed to judgment and execution. And the present application is to set aside the writ and proceedings, for illegality.
By the attachment act, Rev. Laws, 355, the property in this State, of an absconding or absent debtor, may on a proper affidavit being made and filed, be attached for the benefit of the applying creditor and all other creditors of the defendant. There must exist the relation of debtor and creditor, to entitle the applicant for the writ, to have it issued. It must be a debt due; such an one as the plaintiff could on a proper affidavit, demand the defendant to be held to bail. The liability of the defendant must be absolute, not depending on any condition or peculiar situation or character of the defendant. I- apprehend it must be a debt due and owing directly and absolutely from the person whose property is attached. It is admitted in this case, that the debt demanded, is due from the defendant in her own right, and her property liable for the payment.
But it is contended that by the act of the 14th of February, 1818, the person of any female cannot be imprisoned for debt, and therefore, an attachment cannot be taken out against her goods, lands or credits in New Jersey: and the Court have been referred to several decisions of this Court, in support of this po *461 sition. I should feel strongly inclined to this doctrine, if in any of the cases, I could see that the question now presented, had come fairly up and been decided on this point. The proceeding is under a remedial statute passed for. the benefit of creditors, and which by the 32d section of the act, Courts are bound to construe in the most liberal manner for the detection of fraud, the advancement of justice, and for the benefit of creditors. Now in this case, there is no question, but that prior to the act of 1818, exempting females from imprisonment for debt, the attachment would be good under our law, and the plaintiff might recover his judgment, and make his money of the property attached; and the only question in the case is, whether in consequence of the person of a female being exempt from imprisonment for debt, the Court are therefore bound to set aside this writ of attachment, and thus deprive the creditor of all remedy to obtain satisfaction of his debt justly due and owing from the defendant. If this writ is set aside, the property may be transferred, or the defendant may remove to a distant State, and be permitted to enjoy an ample income from her estate in New Jersey, managed by her agents, and leave her honest creditor without the means of redress, unless he will follow her to the south or elsewhere, to sue for his demand.
I cannot adopt a construction which will produce such a result. It would be at variance with what I consider the spirit of the act, and the true intent and meaning of the legislature; unless restrained so to do, by force of plain and direct authority on the point: and I cannot see that the cases decided by this Court, go the length of saying that the inability to hold to bail, is equivalent to the exoneration of the estate of the debtor, from all liability to attachment, merely on that ground. I yield to the doctrine laid down, that when the nature of the demand, or the personal liability of the debtor is such that bail cannot be demanded on an affidavit, that the attachment will not lie, for the same reason : but when the relation of debtor and creditor exists and the debt is such an one, as that on the usual affidavit, the defendant may be held to bail, and the property attached is such and so held, as that it is liable for the debt sought to be recovered, I cannot see that the Court is bound to set aside the attachment, merely because the person of the defendant is exempt from imprisonment. *462 And when the property of the defendant attached, is spent in payment of the debt, and the person of the female is produced by the bail to be surrendered, I would be prepared to say, what according to the very humane and proper enactment of a truly gallant legislature, should be done for her relief. Sufficient for the day is the evil thereof.
This question may come up in'another shape, under the 27th section of the same act, 'which authorizes the issuing an attachment against the heirs, executors, administrators, or of joint obligors or partners, (if absent,) and the estate liable to bo sold for the payment of the joint debt only. Now whether the heir who may not have received any estate from his ancestor — or the personal representative, before he is permitted to controvert the justness of the claim of a creditor of the dec’d. debtor, shall be held to bail, is a question yet'to be settled.
It was said by the counsel for the defendant, that the attachment act does .not contemplate any proceeding by attachment against a female debtor; it is only pi’ovided for the male part of the community : and the particular phraseology of the act, is referred to,’ to prove this; but I apprehend this is a mistake.— , The females who sometimes are traders, buy and sell, and hold property, and become debtors, and sometimes creditors, are within the scope and meaning of the statute, and may not only be proceeded against as debtors, but may stand in need of, and have the benefit of the attachment act, as fully as the Lords of the creation.
In a subsequent act of the legislature, passed 30th May, 1820, Rev. Laws 734, they alter the phraseology, and in the 3d section say, that every person, against whom any attachment shall be issued, shall not after the issuing the same, give, grant, bargain or sell, the same, or any interest in the same, which he, she or they may be seized or possessed of, at the time of issuing the writ. I hope therefore, I risk not a loss of character for gallantry, by saying in my opinion, the females are as much the object of attention in this law, as the males, and áre placed on the same platform for good or for evil.
In the case of Peacock’s heirs against Wildes, 3d Halst. 180, I do not understand the judge to say, that an attachment would not lie against the heir, because he could not be held to bail; but *463 because he could not be held to bail as heir, and as, to effect an appearance in attachment, bail must be filed, was a reason why the Legislature could not have intended to make an heir liable to be proceeded against by attachment, which would oblige him to do what by law he was not bound to, in case a suit should be brought against him.by summons or capias, for a debt of his ancestor. So in the case of Executors or administrators, they cannot be held to bail as such, nor can they be attached, because no affidavit can bo made which will extend to them. But I don’t see it any where declared, that they can’t be attached, because they cannot be held to bail, any more than that they cannot be held to bail, because they cannot be attached.
An insolvent debtor cannot be imprisoned for a debt due from him before his discharge. Is then, all the estate real and personal, which he may afterwards acquire, or become entitled to, by the death of an ancestor, or by marriage, to be exempt from attachment? Can it be, that he can reside in a foreign state, and enjoy a large property in New Jersey, and that his old creditors can have no redress in New Jersey? If they see him in another State, his person may be exempt there; and his landed estate here cannot be reached by any judgment obtained against him where he resides.
If the Legislature should hereafter exempt the person of a debtor from imprisonment for debt, would it not, on the construction now asked to be given to the attachment act, be virtually a repeal of that act ?
I am not prepared to go the length of saying, that the exemption of the person from imprisonment, is to take away from the creditor, the right he has to obtain his just demand, from the estate of the debtor, in this State.
I am therefore of opinion, that this writ of attachment should not on this ground be set aside.

The Writ quashed.

Cited in Walker v. Andersons, 3 Harr. 219.